for Clay County, Texas. All right, Mr Grant. Yes, may it please the court. Tom Brandt for Clay County, Texas. The district court aired when it compelled the county to attend arbitration. And also when it summarily denied Clay County's motion to dismiss. Clay County was not Miss Ashley's employer, did not have any involvement in her termination, was not a party to any arbitration agreement, either directly or indirectly, and significantly no party ever sought to compel Clay County to attend arbitration. The district court aired by failing to adjudicate key threshold issues before it decided sua sponte to compel the county to attend arbitration. Before it, of course, part of the issue, and I know I don't mean to interrupt your train of thought, there's the underlying issue of immunity or whatever it is, but then there's also the question of when, if ever, that can be appealed. Yes, Your Honor, and with respect to the issue of whether it can be appealed, what has happened here is a denial of governmental immunity, essentially, because there's an order to compel the county to an arbitration, which it never agreed to, and it technically, under state law, has no authority to agree to at all. But that arbitration statute is pretty specific and emphatic that it can't be appealed. Yes, Your Honor, and that is in the context of private litigants who have agreed to an arbitration clause. The major distinction here is that this is a governmental entity. Are we to, and again, I apologize for interrupting, I know you have a good argument to make, but are we to read into the statute that Congress implied that there would be an exception? I mean, when they said no appeal, you're telling us that, well, that they didn't really mean that, that we can go ahead and appeal in this situation. No, the congressional action in taking this statute for arbitration has to be read in context of our federalism, and there was never any clear and unambiguous decision by the Congress that state and local governments, entities, should be subject to private adjudication, which will never give a binding opinion. That's sort of why we're so exercised about this case, because it is a bridge too far, I think, to say that the state of Texas or any subdivisions like the counties or cities should be held by a federal statute bound to go into arbitration when there's nothing in state law that allows that. And there is no even plausible claim that we sign on to arbitration agreement. Is there a narrower way of looking at this, though, than because it does, I agree with Judge Smith, it sounds like what you're saying is that we should write into the statute an exception. But isn't it also true that the district court here, I don't know if it's implicitly or explicitly denied a motion to dismiss for governmental immunity, right? Was it explicit or implicit? It was explicitly done, but not on the merits. It was explicitly done as moots, saying- Okay, so he didn't rule on it. He didn't rule on it, but- He did dismiss it, so it was a dismissal. Is there not law that allows you to take a collateral order appeal- Yes. With respect to a denial or even a refusal to rule on an immunity question? Yes. Cohen v. Beneficial and that line of cases, they all stand for the whole idea. We all know qualified immunity appeals are allowed. That's a well-worn path. But it's- That wouldn't allow us to reach an arbitration, right? But it would allow us to send it back if we agreed with that and say, hey, you need to consider immunity. Exactly. Yeah, exactly. Because under the collateral doctrine, which started with Cohen v. Beneficial- We've heard of it. Exactly. It will tell the court, this court as well, that these are truly collateral issues which will never be reached. We will never reach the merits of the defense that we've raised if we are forced to go to arbitration. And quite importantly, the decision that an arbitrator makes will never be a precedential value. So we'll be caught in an endless loop of charges being brought against us. We're not an employer. We have no control. We didn't terminate the person. And that's as a matter of law, as we've put in our briefs. It's a matter of law that the board of managers- It's an ancient statute and there are very few county hospitals. There's county hospital districts, different statute. But the county hospitals are under 263, Chapter 263. And under that, the only involvement that the county has is essentially appointing managers, a board of managers. Those board of managers, under Texas law, control everything. They control the hospital. They hire, fire. They manage the day-to-day operations. And so we are only here because there has been two frivolous arguments made by the hospital to try to bring the county in. Those were that the county hospital and the foundation could have appeared before this court on this appeal, but they chose not to. They were the ones- The hospital said, we're not a suable entity. That's patently false as a matter of law. They are a suable entity. This court has recognized that they're suable and that they've gone through suits. They also said that we, that the hospital is a division of the county. That is patently false. That is just a straight reading of the statute itself. And that's why I think that, and your point, Judge Duncan, is well taken, that under the collateral doctrine order, this is an appropriate remedy because otherwise there is no remedy. What we need to do is we need to reverse, I'm asking the court to reverse the district court's order compelling us to meet to arbitration and to do just as the other district court Judge Reed O'Connor did in a companion case, the Swenson case, which I have referred to. And let me back up a second because all of this took me quite by surprise. There were two surprises in this case, big surprises. One was all of a sudden I've been told I'm to attend arbitration when I never was aware of, I was never given notice that anyone was ever trying to send me to arbitration. That was a big surprise for me. And I responded by scrambling together and filing a motion for reconsideration saying, Judge, please, we don't, we're not a part of this. We shouldn't be sent to arbitration. And that was summarily dismissed. The second large surprise is that no one, no one disputes the key point of this appeal. The plaintiff doesn't, the hospital and the foundation are not here, but no one disputes the central point of my appeal, which is that we should not have been compelled to arbitration, that there was no authority to compel us to arbitration. And at the very least, what the district court should have done was address the underlying facts, underlying issues about contract formation. Was there a contract that was between the county and the Ms. Ashley? And also the, whether there was any attributes that would arguably say that the county was her employer. And then finally, the governmental immunity issue of how in the world can we be compelled to arbitration when we're entitled to defend ourselves in open court, a public court? Why do we have to go to this private venue where we will not be able to have any precedential value to a decision that's made? And we will not have any remedy short of coming after that into saying we should never have been bound by this now fait accompli. So the, I want to talk a little bit about the Swenson case because these are both connected. They're connected, interconnected. If you'll see in the pleadings, Ms. Ashley complains and says that she was in cooperation with Ms. Swenson. Ms. Ashley was the chief nursing officer. Ms. Swenson was the chief executive officer, CEO, or superintendent, they call it, of the hospital. And that they were cooperating in some gripes that they had about the way the hospital was run. County didn't know anything about that, really. It's, that's what the hospital's problems were going on. So then what happens is Judge Cummings first comes out with his order saying, I'm going to send you all to arbitration. Then Judge Reed O'Connor starts sending me to arbitration. But he does something else. He says, I will give you an opportunity to tell me why I'm wrong in sending you to arbitration if there's something about this relationship. And I said, thank you. And I did. And I got him the evidence. And we put what he said was robust evidence in front of Judge Reed O'Connor. And he says, you're right. I'm wrong. You don't go to arbitration. You're not the employer. You had no control. In fact, Texas Attorney General says you don't have any control. As a matter of law, you don't have any control. You shouldn't be held responsible. You shouldn't be hauled into arbitration just because someone makes a frivolous argument that you're the employer. Someone makes a frivolous argument that they're not a suable entity. That's not a grounds. And those frivolous arguments are the single basis for the plaintiffs amending to bring us back in the lawsuit and to say the county should be one of the defendants. There's nothing else in there. There's no factual basis at all for the plaintiffs to be trying to get the county to go to arbitration and to claim that the county itself was the employer. It was not. The evidence and we tried first to get some evidence before the court. We understand that motion was denied. I understand that. The second motion was carried with the case. Remind me, did Judge O'Connor in this other case you're talking about address the question of whether a county under Texas law can be compelled to go to arbitration and or does government immunity or whatever immunity we're talking about shield them from that? Did he address that? I honestly don't remember, but I will check on that and get back to you. My best recollection as I'm standing here today is that he did address governmental immunity and say that there was not a waiver of governmental immunity and that was part and parcel of our arguments to him. So his conclusion may not have been as explicit as you and I would have liked to have been for this purpose. But it was nevertheless the argument that we did make below. We were saying, no, we do not have the capability of legally under Texas law of entering into an arbitration agreement. And it goes even farther because even if you were to set that aside for a second and say, okay, just assume for a sake of argument that you could, that a county could agree to an arbitration clause and it would be enforceable against them. The only way that could happen is if there were a called meeting of the county commissioner's court and they were to decide in open session that that were the case. Otherwise it would not be valid. So we have layers of invalidity here that boggle the mind, which is what exercised me to say, oh, we've got to stop this because this is a frivolous claim that's being made against the county. And now we're going to be not given the opportunity to have a taxpayer funded court in public hear our claims by article three judges. No, we're going to go to expensive private proceeding that's behind closed doors and we're going to have to live with the outcome and the taxpayers are going to have to pick up the tab for all of that. So I would ask the court to reverse, my time is running short here, but I'm asking the court to reverse and if not render, to at least reverse with instructions because I think that the arguments that we've made here call for a reverse and render. And I know the other side said, well, wait a minute, those issues were not brought before the district court. That's because we were truncated in our ability to bring our defense. We didn't know that we were being asked, that it was, we were not given notice that we might be sent to arbitration. Reverse with instruction to do what? To consider immunity or what? Yes, yes.  Actually, let me start first with what my first request is, that's reverse and render and say that as a matter of law, you can't be, the county can't be the employer, can't be bound by an arbitration agreement, doesn't have authority under Texas law to do so and therefore it's null and void and we're done. But otherwise, reverse and render to address those issues that I've just talked about. I understand this is a court of review, not a first view. I understand that. So, but those issues are clearly teed up here. I would ask you to at least opine upon them and say to the district court, hold on a second, you need to look seriously at this situation and look at the evidence that the county has put forward, both in the Swenson case and in this case, that clearly show that the county had no involvement, no responsibility, cannot be bound to an arbitration agreement, it did not sign, cannot be bound to an arbitration agreement that even did sign, which it didn't, but under Texas law. But I see. If we were to agree with you as to the result, would we need to say, or could we say in that opinion that Cohen effectively overrules the statute insofar as the statute prohibits an appeal?  Yes. That line of cases, Cohen being the granddaddy case, but that whole line of cases and the reasoning for those line of cases fits neatly to give us the opportunity to appeal here. You don't get private sector people that ability, but you do have this under Cohen for public sector. Thank you very much. Grant, you've saved time for a burial. Yes. May it please the court. You will not hear me disagree that this case is not appropriate for arbitration for all the reasons he expressed. Obviously, we've said that in our briefing, but I will disagree strongly about the suggestion that this is appropriate for rendering because we have the same problems. Both the district court below at ROA 346 made it clear it did not make a determination about the employment nor the issue about whether this is a division of the county or not. That has not been. For the same reasons, they vehemently at DOC 60 in their opening brief, page 10, said we've been violating due process because this has not been adjudicated. We would say the same. This has not been adjudicated, this important threshold issue, and there would be no basis for this court to render on those factual issues. And by the way, we're here for a very specific reason, obviously, because the hospital has asserted that it's a co-employer, so to speak, and it's a division. But the county is not necessarily blameless in this factual issue, and I think it's because the factual issue about whether it's a division or simply some independent entity also relies, and I'll refer the court to ROA 346, where the county's counsel was specifically asked, is it a division or not? And the response, which is part of the record, is our current position is that it's not a division. So, you know, it's not a matter of apportioning blame, but we're here because, for whatever reasons, those facts, which should not be flexible, have been treated as flexible by the county and the hospital each. And so as a practical matter, when you look at that factual dispute, who's the employer or co-employer, Ms. Ashley deserves, Nurse Ashley deserves an adjudication of that as well. And so we would agree that this is appropriately remanded with instructions to have those two threshold issues, which the court below correctly said, I did not touch. I did not chut on these decisions. I did not adjudicate those decisions. JUSTICE KENNEDY Consistent, I think, with what you just said, but I'm just going to read the two sentences from your brief and see if this is still your position. Ms. Ashley requests that the court reverse the district court's order of compelling arbitration, further requests that the court reject Clay County's arguments regarding her claims under state and federal law and remand for further proceedings. Is that, is that? That's it. That's it. And frankly, we also, to make it clear, we don't believe, you know, there were two buckets of claims penned against the county. One is under the statute, the occupational code, which as a nurse, Ms. Ashley is entitled to pursue. There is not immunity that's waived for that. So if they are a co-employer, they don't get to get away from the occupational code, which is entirely different, by the way, from the claims raised by the CEO, Ms. Swenson, who is not a nurse under the Texas whistleblower statute, which have different requirements, different factual showings. And that's, that's why the Swenson case is neither ratio to caught and nor could be properly applied to nurse Ashley because it's different claims. But in addition to the occupational code retaliation, we have some very specific constitutional 1983 claims, two of them. One is freedom of speech. The second is association. Those are unresolved. And whether or not it goes to arbitration, as the court below indicated, or the court makes a different termination, those remain to be adjudicated as to the county. And so what would the instruction be? I'm just asking for two or three sentences, whatever you think would be appropriate. What would our instruction be to Judge Cummings? I mean, it's a remand for further proceedings, but he might like us to tell him what further proceedings are available to him or which further proceedings he's precluded from engaging in. Well, I think from our perspective, it is those two threshold questions which the court below indicated. I think everybody's in agreement, at least here, not including the hospital for some reason, but you need to decide the employment status. You need to decide whether the hospital is an independent entity or simply division. But in addition, we still have, as to putting aside whether or not they're the employer, we still have constitutional claims that remain to be adjudicated, we believe by a jury. 1983 claims. 1983, those two claims I was indicating. Those have not been touched, so to speak. And they're, as noted in the record below, you know, they're clearly pled under the Third Amendment petition. This is a situation where Nurse Ashley, in a public meeting, and it was claimed, you know, was a troublemaker. Well, that's one way of talking about an honest reporter when you're talking about, I would say it's a lot more than gripes when you're talking about the potential diversion of fentanyl in large numbers in a rural county. I would think it's substantially more than gripes when you're talking about unqualified personnel treating county residents. I would think it'd be substantially more than gripes when you're raising issues about mold in patient rooms. These are important safety issues that were raised in a public forum. I understand. All right. So Judge Cummings has entered an order compelling arbitration. What would we tell him in our order if we agree with, generally with you? Would we tell him that there can never be arbitration here? Would we tell him that he should reconsider arbitration? He's going to want us to tell him something, and I think it's only reasonable that we tell him and tell the two sides what happens with arbitration henceforth. Right. We would agree, and I agree, that the court should, with instructions, indicate that this case, because of the San Antonio River Authority, the ability, in other words, it's void ab initio. This would be, I guess, would be similar to a child can't enter into a contract. The county, under Texas-applicable law, as determined by the Texas Supreme Court, cannot enter, except under certain circumstances, into this thing, and it goes to the federalism and sovereign immunity issues that the court's already heard about. So as a practical matter, I think that this case, on these facts and on this record, even as developed below, cannot go to mediation, or I'm sorry, arbitration, because of... And we would say that to Judge Cummings? I think that's on the record here, and based on the facts and the law applicable, I think that would be a necessary part of the court's instructions to the court below. Because when you look at it, if this is, in fact, whether they're an employer or simply another defendant, if they're not subject to arbitration, that dictates what happens here. So I suppose one could argue that both sides agree there should not be arbitration, so that claim is, in effect, moot, or there's no case or controversy as to that issue. Is that fair to say? The hospital's not... Or is that saying too much? I mean, I don't know how to handle a situation where a party that asks for relief from the district court below does not participate in the appeal. I don't know if it's happened a lot to the court, but in this case, to the extent that, you know, the hospital claimed that arbitration was necessarily appropriate, got an order entered by the district court below, and they don't even show to defend that, I don't know whether that's a moot issue, whether that's a waived issue. I don't know how the court would characterize it, but it certainly is not a live issue before this court in the briefing of the oral argument. It just, it's gone. And, you know, whether or not the court makes a determination on what basis, I don't know, but I think that it would be a clear record here that that particular issue, which is properly appealed, has been waived, moot, whatever you want to call it. So when we go forward, you know, there are several issues that I want to kind of flag. Aside from the rendering issue, you know, we vehemently- You say it's waived or moot, though that sort of covers up saying it was wrong. Well, yeah, there's a procedural basis, I think, on the law. Yeah, I mean, I'm just saying that everybody agrees it was incorrect, but nobody says it's incorrect. Just says it's waived, it's moot, whatever. It's sort of still dangling out there in the atmosphere. You know, it's- Well, I think this- I guess I'm just pushing the point of whether- Yeah, no, I mean- You ought to affirmatively say that, since it seems to be in the case. It is in the case, or it was in the case below. It's essentially vanished here because nobody believes it appropriate at this point. So the narrowest ruling would be it's waived, it's moot. There's an adjudication by this court that, on the record and the fact that nobody showed up to defend it, it's gone, and that's a law of the case. But certainly, it could be also appropriate to instruct the court that, on the record before, that this party, the county, is not subject to arbitration unless certain requisitional requirements are met. That's also a finding. So that's on the- So you have a procedural in and on the merits. And I think both ways are certainly a path that might be appropriate for this court to follow. But I want to end with the issue of- I think this is one where, frankly, I don't need my time completely because I think there's a lot of stuff we're agreeing about. But the jurisdictional issue for the 1983 claims, this was a footnote 146 in their opening brief that said, look at what our briefing was below. But you also heard counsel acknowledge there was no adjudication of the 1983 claims. Ms. Ashley has never been permitted an opportunity to have those adjudicated on the facts. And clearly, on her Third Amendment complaint on a 12b-6, there's clear enunciated violation of her constitutional rights to free speech and association. With respect to those claims, did the district court deny a motion to dismiss? Well, it denied. I mean, at this point, what it did is, when they did a motion for reconsideration, it said, I haven't decided these things. I don't see that there's a final judgment on that. How would we have appellate jurisdiction to reach anything about? Well, that's my point. You're saying that? In other words, what I'm saying is, we never got an adjudication on that issue. We never really had a chance to respond. And so clearly, for them to suggest, I don't think this court should even reach it because I don't think it was adjudicated. I mean, we have to have jurisdiction to reach? Correct. I think the point is, there's no jurisdiction. And that's why we spent about a third of our brief talking about the jurisdictional issues, that when they suggest that you ought to make factual determinations in the first instance, when the district court did not so, we don't believe you have jurisdiction. But at the end of the day, I think it's very clear. And like I said, this is an unusual situation. I haven't seen it where the party that gets relief below just doesn't show up. And everybody else says they got it wrong. But from a very practical direct endpoint under the applicable law, we would request that the court reverse and render with the instructions to confirm that this case may not be sent to arbitration, that the remaining claims need to be adjudicated, and that the decisions, the threshold issues of employment status and, or who's the employer rather, and whether this is division or some other entity, be resolved in accordance with the court's findings. And with that, I would ask for that to be entered. Thank you. All right. Thank you, Mr. Doyle. Mr. Brandt for a rebuttal. Rebuttal or agreement. Yes, Your Honor. First of all, I do think there's a case of controversy here that's live and that the court has jurisdiction to hear. And that is what I've brought to the court saying, I've been compelled to arbitration and I shouldn't have been. That's a live controversy. I realize that we have some practical things to work out here. And what I would suggest is, or inform the court, first of all, Judge Cummings' first order was denied my motions as moot because he sent us all to arbitration. When I filed a motion for reconsideration, he closed his, he denied it and he said, this is at record 835, the court cannot make a determination at this juncture whether the evidence will rule out any of the named defendants as the actual employer or co-employer of plaintiff and therefore bound by the arbitration agreement. So he told us all that he was aware that there was evidence that might need to be looked at on this issue, but he was saying, let's let the arbitrator deal with that. And what I'm saying, no, that's not right. You can't let the arbitrator deal with that. So what I would suggest, and when you're asking the direct question, what do we instruct the district court to do and how do we deal with these other claims? First of all, I would say I had four things and I'll add a fifth suggestion. Number one, the court should decide whether Ms. Ashley was an employee of Clay County. Number two, whether Clay County had any involvement in Ms. Ashley's termination. Number three, whether a valid enforceable arbitration agreement existed between Ms. Ashley and Clay County. And then four, whether Clay County's entitlement to governmental immunity has been waived with respect to that arbitration agreement. Now, the fifth one I'm suggesting as a practical matter is that the district court be instructed to decide whether any governmental entity in Texas has the authority to enter into an arbitration agreement. If that question is answered, then I think that it would satisfy, it's, I don't have a dog in that fight. I just want to get my client out of this litigation, which is truly between the employer and the ex-employee, right, the hospital and Ms. Ashley. Well, that's what I was gonna say. I mean, you're here as appellant, the county, the hospital's not here. That's right. So, I mean, it seems to me that whatever we say with respect to the county, arbitration, immunity, whatever, hospital's still there. You know, somebody's gonna have to do something about the hospital. Hospital's not even here. Right, but that's not my fault. That's not your problem. I mean, allegedly, one might say. You have a problem that you're asking how to deal with it. My suggestion would be tell the district court to look at this issue because that's what the plaintiff's asking for. I don't care one way or the other. All I did was when they said, when the hospital said move, wanted to move for arbitration, I said, you do whatever you want to do, people over there, but not me. Don't send the county. And so now, all of a sudden, I'm there. I'm saying, I want out. I just want out of the lawsuit. But you might consider asking the district court to say, well, actually, in answering the fourth question for me, whether Clay County's entitlement to governmental immunity has been waived, or with the third question, whether a valid enforceable arbitration agreement exists. If you answer that question as to Clay County, you are necessarily answering it as to the hospital because both are governmental entities and there's no distinction that I'm aware of that would say that some governmental entities can enter into arbitration agreements and others can't. So if you're answering the question for my client, you're going to necessarily have an opinion that's going to have an effect on the hospital. And they're not here. They can't defend themselves. But that's not my problem and not my issue. I think that it's clear that it's very unusual, but we're in agreement. The order to arbitration was improper. It needs to be reversed and remanded. I understand the argument that, again, you're a court of review, not a first view. His client has arguments against my client as to free speech and free association. That may be something that needs to be looked at on remand as well. But the key question is, do not allow us to be sent to arbitration. Thank you. Thank you, Mr. Grant. Your case and all of today's cases are under submission and the court is in recess until 9 o'clock tomorrow.